McCULLOUGH, Appellant,

v.

SPITZER MOTOR CENTER, INC., Appellee.

[Cite as *McCullough v. Spitzer Motor Ctr., Inc.* (1996), 108 Ohio App.3d 530.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68642.

Decided Jan. 12, 1996.

*Nash & Nash* and *Carl Nash,* for appellant.

*Bradley & Giardini Co., L.P.A.,* and *Anthony B. Giardini,* for appellee.

PORTER, Judge.

Plaintiff-appellant Dawn McCullough appeals from a verdict and judgment in favor of defendant-appellee Spitzer Motor Center, Inc. ("Spitzer") arising out of her fraud claim in the purchase of a "factory car." The plaintiff contends that the court erred in directing a verdict on punitive damages, in ruling *in limine* that plaintiff could not introduce evidence of repairs, and in refusing to charge on the Consumer Sales Practices Act. We find no error and affirm for the reasons hereinafter discussed.

Plaintiff brought suit on February 8, 1988 in the common pleas court for fraud and violation of the Consumer Sales Practices Act ("CSPA"), fraudulent nondisclosure, breach of warranty and misleading odometer disclosure.

The trial court granted defendant Spitzer's motion for summary judgment on October 22, 1990 and an appeal to this court ensued. On January 27, 1994, this court affirmed summary judgment on three counts, but reversed on the fraud and CSPA counts and remanded them for trial. *McCullough v. Spitzer Motor Ctr., Inc.* (Jan. 27, 1994), Cuyahoga App. No. 64465, unreported, 1994 WL 24281.

On remand, plaintiff voluntarily dismissed the CSPA claim and the case went to trial on February 1, 1995, solely on the fraudulent misrepresentation claim for which plaintiff sought compensatory and punitive damages.

The testimony at trial was as follows. In early February 1985, plaintiff and her husband saw a series of advertisements placed by Spitzer advertising 1984 Dodge Omni automobiles as part of a "special purchase from the Chrysler Corporation" being sold for $5,950. The McCulloughs visited Spitzer's showroom in response to these advertisements. After test-driving an Omni, they offered to buy the car. They were informed by the sales representative that the entire stock of this particular model had already been sold out, but another shipment was expected and that they would be notified when it arrived.

Approximately ten days later, the sales representative telephoned the McCulloughs and informed them that another shipment of the specially purchased cars had arrived. The cars were not Omnis. The dealership had acquired Plymouth

Horizons, however, which were essentially the same model as an Omni. The McCulloughs were told that they had been purchased from Chrysler as previously advertised and that the Horizon was a "factory car." Due to the reasonable price, the plaintiffs purchased the Horizon.

Mr. McCullough testified that when he asked Jackie Vella, the sales representative, about the origin of the car, she informed him that the car was formerly driven by a Chrysler employee. He testified that no one had told him that the car was previously a rental car which was purchased at an auction.

Mrs. McCullough also testified that when her husband asked Jackie Vella the origin of the car, she told him that it was a car formerly driven by a Chrysler employee. On cross-examination, plaintiff admitted that in her deposition she had testified that she could not recall whether Jackie Vella had told them that the car was formerly driven by a Chrysler employee and that Vella had told them that she did not know the origin of the car. Plaintiff also testified on cross-examination that she never specifically asked Vella what a "special purchase car" or "factory car" was; however, it was her understanding that it was a car formerly driven by a Chrysler salesman. Plaintiff continued to maintain on cross-examination, however, that she had overheard Vella tell plaintiff's husband that the car was previously driven by a Chrysler employee.

Jackie Vella, the sales representative, testified that she did not tell plaintiff or plaintiff's husband that the car was formerly driven by a Chrysler employee, as she was not informed of the background of each particular car. She was only informed that the cars were purchased at Chrysler factory auctions, not who had previously driven the particular cars. She claimed that she had only told the plaintiff and her husband that the car was a "factory car."

Plaintiff and her husband testified that a year and a half after the purchase, they "discovered" that the automobile had not been driven by a Chrysler employee but was, instead, a part of the Avis–Rent–A–Car fleet and had been used as a rental car. Fleet cars are returned to Chrysler and sold at auction to interested car dealers such as Spitzer. The McCulloughs sought to rescind the contract of sale and return the car. Spitzer was willing to rescind, but only if plaintiff traded in the car for another Spitzer car. Plaintiff refused the offer and instead traded the car in at another dealership for $1,500.

Based upon the above evidence, the trial court granted Spitzer's request for a directed verdict on the issue of punitive damages and the jury returned a verdict for Spitzer on the fraud claim. Plaintiff has filed a timely appeal to this court.

We will address plaintiff's assignments of error together where they are interrelated and for ease of discussion.

"I. The court erred in granting defendant Spitzer Motor Center Inc.'s motion for directed verdict with respect to the issue of punitive damages."

"II. The court erred in advising the jury that 'ladies and gentlemen of ·the jury, the court has reviewed the evidence in this case and has made one decision. The court is withdrawing from the jurors' consideration the issue of punitive damages. So the jury will only make a determination on compensatory damages, if any.'"

"V. The verdict and the court's granting of appellee's motion for directed verdict as to punitive damages are against the weight of the evidence."

These assignments of error challenge the trial court's directed verdict on punitive damages. Plaintiff contends that there was sufficient evidence to submit the issue to the jury. In essence, plaintiff claims that Spitzer knowingly misrepresented a car to be a "factory car," *i.e.*, one originally driven by a Chrysler employee, when, in fact, the car had been previously used as an Avis rental car. We find, as did the trial court, that this was not sufficient to permit an award of punitive damages.

In ruling on a directed verdict motion, the court construes the evidence in a light most favorable to the party opposing the motion. *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 93, 30 OBR 295, 296, 507 N.E.2d 352, 353–354. The judge neither weighs the evidence nor determines the witness's credibility. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469. If the court finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the party opposing the motion, the court should direct a verdict. Civ.R. 50(A); see, also, *Mitchell, supra.*

The Ohio Supreme Court has held that "in each case of alleged fraud the plaintiff, in order to be awarded punitive damages, must establish not only the elements of the tort itself, but, in addition, must either show the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." *Charles R. Combs Trucking, Inc. v. Internat. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of syllabus, and at 245, 12 OBR at 325–326, 466 N.E.2d at 888, citing *Logsdon v. Graham Ford Co.* (1978), 54 Ohio St.2d 336, 340, 8 O.O.3d 349, 352, 376 N.E.2d 1333, 1336. The issue presented is whether the conduct of Spitzer's sales representative is considered "malicious, deliberate, gross or egregious" on the facts of this case.

The malice necessary for an award of punitive damages has been defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety

of other persons that has a great probability of causing substantial harm." *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 640 N.E.2d 159, paragraph one of syllabus, citing *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174.

In *Logsdon, supra,* a defendant was accused of selling a used garbage packer as a "new unit" and failing to indicate the correct model year of the packer. In *Logsdon*, the trial court gave a jury instruction on the issue of punitive damages. The Ohio Supreme Court reversed, stating as follows:

"After studied review of the evidence presented in the trial court, we are of the opinion that Tucci knowingly concealed from appellee a fact material to the transaction, *viz.,* that the garbage packer was approximately one year old, by referring to the new truck and the attached garbage packer as a 'new unit,' and by failing to indicate the model year of the garbage packer on the retail buyer's order form. However, we conclude that such actions on the part of appellant's salesman did not evince a malicious, wanton or gross fraud, and that therefore the trial court erred in giving the instruction on punitive damages." *Id.,* 54 Ohio St.2d at 340, 8 O.O.3d at 352, 376 N.E.2d at 1336.

In the present case, viewing the evidence in the light most favorable to the plaintiff, there was no evidence offered which would tend to prove "malicious conduct" warranting punitive damages on the part of Spitzer or the saleswoman, Jackie Vella. Although plaintiff and her husband both testified that Jackie Vella had informed them that the origin of the "factory" car was that it was previously driven by a Chrysler employee, there was no evidence presented that her erroneous statement regarding the origin of the car was knowingly made with malice. It was no different in culpability from the misrepresentation in *Logsdon, supra,* that the garbage packer was "new" when in fact it was "used."

The mental state required for an award of punitive damages was again recognized in *Klemas v. Flynn* (1993), 66 Ohio St.3d 249, 251, 611 N.E.2d 810, 812:

"We also have focused on the culpable mental state of the defendant in cases in which we defined the standards for recovery of punitive damages. In *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, we recognized that because 'punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior.' *Id.* at 335, 512 N.E.2d at 1176."

There is no proof of conscious wrongdoing here. Even if there was sufficient evidence for the jury to find fraud, which it did not, there was no evidence of the malice or deliberate wrongful conduct. The sales representative may have

innocently thought that a factory car was one formerly driven by a Chrysler employee. Simple fraud or misrepresentation does not support a claim of punitive damages. *Logsdon, supra,* 54 Ohio St.2d at 339, 8 O.O.3d at 351–352, 376 N.E.2d at 1335–1336; *Mid–America Acceptance Co. v. Lightle* (1989), 63 Ohio App.3d 590, 602, 579 N.E.2d 721, 729. There was no evidence of malice or ill will on the part of Spitzer and its employees warranting a punitive damages award.

We find no error in the trial court's directed verdict in favor of defendant on punitive damages.

 We further find that the court's failure to charge on punitive damages, even if erroneous, was not prejudicial. In the instant case, the jury returned a verdict in favor of defendant, finding no fraud. For this reason, punitive damages could not have been awarded even if the jury had been given an instruction concerning punitive damages. By finding for the defendant, the jury essentially found that there was no fraud or actual damages. "[P]roof of actual damages on the underlying claim is a necessary predicate for an award of punitive damages." *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 649, 635 N.E.2d 331, 342; *Weaver v. Colwell* (1992), 73 Ohio App.3d 139, 148, 596 N.E.2d 617, 622–623. Since the jury's finding of no liability on plaintiff's fraud claim eliminated any basis for punitive damages, plaintiff was not prejudiced by the court's failure to give a punitive damages instruction. *McFadden v. Galena Shale, Tile & Brick Co.* (1987), 10 Ohio St.2d 70, 71, 39 O.O.2d 55, 55–56, 225 N.E.2d 229, 230.

 The trial court committed no error in advising the jury of its directed verdict on the punitive damages claim. The court advised the jury it was "withdrawing from the jurors consideration of the issue of punitive damages. So the jury will only make a determination on compensatory damages, if any." Plaintiff contends that this instruction effectively told the jury that the defendant's conduct was "not too serious" and also that it confused the jury. Plaintiff also contends that the "if any" part of the statement minimized the jury's consideration of compensatory damages. We disagree.

It is only common sense that the jury be advised of the court's decision to withdraw a previously contested issue from consideration. 89 Ohio Jurisprudence 3d (1989) 358–359, Trial, Section 292; *Lewistown Foundry & Machine Co. v. Hartford Stone Co.* (1915), 92 Ohio St. 76, 110 N.E. 515, paragraph one of syllabus. Otherwise, the jury could still have punitive damages under consideration when the evidence was not sufficient to support such a claim. The advice is not aimed at "minimizing" the situation, but is instead an instruction given so that the jury may apply the proper standards of law to the matter at hand. It would be error *not* to advise the jury of this matter and risk tainting the verdict.

The "if any" statement was, at worse, a neutral comment. In *Logsdon,* the trial court instructed the jury that "now, the measure of these compensatory damages, if any, is the difference * * * between" the new and used model of the garbage packer. 54 Ohio St.2d at 338, 8 O.O.3d at 350, 376 N.E.2d at 1335. The clause "if any" is used both in *Logsdon* and the present matter as a device to inform the jury that the determination of compensable damage is a matter solely for the jury. The court's use of such a phrase, which is a common practice, stresses the court's impartiality and is not offensive.

For the foregoing reasons, Assignments of Error I, II and V are overruled.

"III. The court erred in granting defendant Spitzer's motion IN LIMINE prohibiting plaintiff from introducing evidence of repairs to the automobile after purchase."

█ In violation of App.R. 16(A)(7), plaintiff has failed to cite any authority to support this assignment of error. Furthermore, plaintiff failed to proffer evidence regarding the cost of repairs at trial. As this court in *Collins v. Storer Communications, Inc.* (1989), 65 Ohio App.3d 443, 446, 584 N.E.2d 766, 767–768, stated:

" 'A motion *in limine,* if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue.' *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 288, 503 N.E.2d 142, 145. Accordingly, a proponent who has been temporarily restricted from introducing evidence by virtue of a motion *in limine,* must seek the introduction of evidence by proffer or otherwise at trial in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. *Id.* at paragraph two of the syllabus." See, also, *Sutherland v. Nationwide Gen. Ins. Co.* (1994), 96 Ohio App.3d 793, 812, 645 N.E.2d 1338, 1351–1352; *Gibson v. Gibson* (1993), 87 Ohio App.3d 426, 430, 622 N.E.2d 425, 427–428; *Brentson v. Chappell* (1990), 66 Ohio App.3d 83, 87, 583 N.E.2d 434, 436–437.

Since a review of the record shows that plaintiff failed to make a proffer at trial of the excluded evidence, this error was not preserved for review on appeal.

This assignment of error is overruled.

"IV. The court erred in failing to give plaintiff's request to jury instruction No. 10 that 'to sell an automobile without disclosing prior ownership by a car rental company is deceptive and a violation of the Ohio Consumer Sales Practices Act as it creates in the mind of a reasonable consumer a false impression as to the prior use of a motor vehicle.' "

■ Plaintiff voluntarily dismissed her claim under the Consumer Sales Practices Act. It would have been erroneous for the trial court to charge on the CSPA when the plaintiff herself voluntarily dismissed the claim. There was no argument or evidence regarding the CSPA and, therefore, no instruction on the Act was warranted. The court is only obliged to charge on the law applicable to the evidence presented. *Steadley v. Montanya* (1981), 67 Ohio St.2d 297, 300, 21 O.O.3d 187, 188–189, 423 N.E.2d 851, 854–855; *Phillips v. Garfield Hts.* (1992), 85 Ohio App.3d 413, 420, 620 N.E.2d 86, 91–92.

This assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

MATIA, P.J., concurs.

NAHRA, J., concurs in judgment.

NAHRA, Judge, concurring in judgment.

I concur in judgment because the jury apparently found no damage. I write separately because I believe that the conduct here was clearly actionable and warranted an instruction on punitive damages. To merely concur might indicate approval of the conduct evidenced in this case.

The advertisements run by Spitzer presented these cars as "factory cars" and "a special purchase from Chrysler Corporation." However, they were not purchased from Chrysler, but from Avis, and the representation that they were factory cars was obviously intended to hide the fact that they were rental cars. Whether the salesperson "innocently thought a factory car was one formerly driven by a Chrysler employee" is immaterial. Spitzer Motor Center, Inc. is responsible for whoever got these cars from Avis and then advertised them as coming from Chrysler. These actions were certainly conscious and deliberate on the part of Spitzer and the intent to deceive is self-evident. From these facts, the jury could infer malice. See *Buchanan v. Spitzer Motor City, Inc.* (Feb. 7, 1991), Cuyahoga App. Nos. 57893 and 58058, unreported, 1991 WL 13003, an odometer rollback case, where punitive damages were upheld. In that case, we held that the jury could reasonably infer malice where the appellants (Spitzer) acted with a conscious disregard for the rights of others, that had a great probability of causing substantial harm. In my opinion, the facts here are no less egregious.